**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| CONNIE LAR, guardian of J.O., a minor<br><br>Plaintiff,<br><br>vs.<br><br>BILLINGS SCHOOL DISTRICT, a public school district,<br><br>Defendant. | CV 17-127-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Connie Lar ("Lar"), as the parent/guardian of J.O., a minor, brings this action pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, and 42 U.S.C. § 1983. (Doc. 1 at 2.) Lar alleges that J.O. was subjected to a hostile educational environment and racial discrimination by defendant Billings School District (the "District"), and she seeks compensatory damages, punitive damages, injunctive relief, and attorneys' fees. (Doc. 1 at 11-12.) Before this Court is the District's Motion to Dismiss (the "Motion"), brought under Fed. R. Civ. P. 12(b)(1) and (6). (Docs. 3, 15.) Having reviewed the parties' arguments and submissions, the Court makes the following findings and recommendations.

**I.     Factual Background**

In considering a Rule 12(b)(6) motion to dismiss, a court must accept as true the material facts alleged in a complaint, and construe them in a light most

1

favorable to the non-moving party. *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). Therefore, the Court compiled the background facts from Lar's Complaint (Doc. 1) (the "Complaint").

J.O. is a minority-race minor student-athlete at Billings West High School ("Billings West"). (Doc. 1 at 1.) On or about January 19, 2017, Billings West Assistant Principal Rod Gottula ("Gottula") called J.O. into his office. (Doc. 1 at 4.) Gottula questioned J.O. about allegations that J.O. had violated the District's Athletics and Activities Code of Conduct by attending a party where alcohol was being consumed. (*Id.*) The District's Athletics and Activities Code of Conduct for the 2016-2017 school year stated in pertinent part:

> **Knowingly Present** – Student-participants who attend a house party or other functions in which under age drinking, drug use or other illegal activities are taking place and remain in attendance upon finding out about these illegal activities, are in violation of this Code of Conduct and will be subject to disciplinary action as defined above for chemical use. It is recommended that any student-participant who unknowingly enters a function in which illegal activity is taking place and subsequently recognizes the illegal activity, immediately leave the area and call their coach and their parents to report this situation. Student-participants who make the difficult choice to leave will not be subject to disciplinary action. (Doc. 1 at 3.)

The Code of Conduct also included due process protections for students facing discipline:

> Student-participants will be informed of their right to have a parent or other adult present while being questioned, the right to be given another copy of this Code of Conduct, and the right to submit evidence at all stages of this process. Participants shall be informed of the alleged

2

>violation and any evidence of or witnesses to the violation. The student shall have the right to explain or refute such information.
>Another school employee will be present during questioning of a student for the purposes of taking notes of the questions and answers and keeping a record of all materials gathered. (Doc. 1 at 7.)

During Gottula's meeting with J.O., Gottula informed J.O. that he (Gottula) had received a photograph of J.O. at the party where alcohol was being consumed, but he refused to show the photograph to J.O. (Doc. 1 at 4.) J.O. admitted to being at the party, but said he left as soon as he realized alcohol was being consumed. (*Id.*) J.O. further stated he did not consume any alcohol at the party. (*Id.*) Nevertheless, Gottula suspended J.O. for 25 percent of the basketball season for allegedly violating the Code of Conduct. (*Id.* at 5.) Gottula did not inform J.O. of his rights to have a parent or other adult present during the meeting or to submit evidence, and no other District employee was present while Gottula questioned J.O. (*Id.* at 4.)

Lar met with Gottula later that day. (*Id.* at 5.) During their meeting, Lar asked about the photograph. (*Id.*) Gottula responded, "I think it's a video," and refused to show it to Lar. (*Id.*) Gottula stated he knew J.O. was not consuming alcohol at the party, but J.O. should have contacted his coaches and disclosed that under-age drinking was taking place. (*Id.*) Gottula further acknowledged that J.O. was not participating in any sports at the time of the party, and therefore may not

3

have been subject to the Code of Conduct. (*Id.*) Gottula did not ask Lar if J.O. had reported the incident to her. (*Id.*)

Lar submitted a written appeal of J.O.'s suspension to Billings West Principal Dave Cobb ("Cobb") that same day. (*Id.*) Cobb denied the appeal, stating the matter was in an investigative phase. (*Id.*) Lar met with Cobb on January 20, 2017, and Cobb informed Lar that he was meeting with other District employees that afternoon to render a final decision about J.O.'s suspension. (*Id.* at 4-5.) Cobb contacted Lar on the afternoon of January 20, 2017, to inform her that the District employees did not "have enough evidence to overturn J.O.'s suspension." (*Id.* at 6.) J.O. was forced to sit out more than 25 percent of the season. (*Id.*)

Lar claims that non-minority athlete participants were present at same party where alcohol was being consumed, and that these students were not suspended from participation in athletic events. (*Id.*) Additionally, Lar asserts District employees overturned the suspension of a non-minority athlete participant who had been suspended for attending a party at which alcohol was being consumed. (*Id.*)

## II. Parties' Arguments

### A. Complaint

Lar asserts three causes of action in her complaint. Count I is brought pursuant to 42 U.S.C. § 1983 ("§ 1983"), and alleges that the District violated

4

J.O.'s Fourteenth Amendment right to equal protection by subjecting J.O. to discipline without proper investigation, by contravening the District's due process policies, and by applying the Code of Conduct disparately against J.O. (Doc. 1 at 8.) Lar further alleges the District "has and/or had unconstitutional policies of subjecting minority students to discipline different in kind and extent than Billings Public School students of non-minority race," and failed "to adequately train and supervise School District employees with regard to due process and Equal Protection of the Laws." (*Id.*) Lar contends the District "has followed these unconstitutional policies . . . with regard to other minority Billings School District students." (*Id.*)

In Count II, Lar alleges the District intentionally discriminated against J.O. on the basis of his race, in violation of 42 U.S.C. § 2000d, Title VI of the Civil Rights Act of 1964 ("Title VI"). (*Id.* at 9.) Lar further contends the District "had knowledge of and allowed for a pervasive, severe, and objectively hostile environment regarding race by subjecting Plaintiff to discipline different in kind and extent than other Billings Public School students and preventing him from an equal educational experience." (*Id.*)

In Count III, Lar asserts another claim under § 1983 alleging a violation of J.O.'s Fourteenth Amendment right to equal protection for failure to train or supervise. (*Id.* at 10.) The Complaint asserts the District, acting with deliberate

indifference, "had a practice of failing to adequately train and supervise its employees in the fair disciplining of the student population," "failed to take reasonable actions to provide Plaintiff J.O. an educational experience equal to the educational experience provided to non-minority students," and subjected J.O. to "different disciplinary practices than those for non-minority students." (*Id.* at 10-11.)

### B. The District's Motion to Dismiss

The District now moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1] Although it is not entirely clear from the District's motion and briefs, it appears to move to dismiss Counts I and III under Rule 12(b)(1) for lack of subject matter jurisdiction, based on Eleventh Amendment immunity. The District appears to further seek dismissal of all claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, based upon Lar's failure to exhaust administrative remedies.

## III. Legal Standard

Generally, a plaintiff bears the burden of establishing subject matter jurisdiction on a motion to dismiss under Rule 12(b)(1). *Kokkonen v. Guardian*

---

[1] The District originally also moved to dismiss under Fed. R. Civ. P. 12(b)(4) and (5), contending that Lar failed to properly serve the District. (*See* Doc. 4 at 12-13.) However, the District withdrew this argument in its reply brief. (Doc. 15 at 6.) The Court therefore does not address it.

*Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). But the Ninth Circuit has determined that "Eleventh Amendment immunity . . . does not implicate a federal court's subject matter jurisdiction in any ordinary sense." *ITSI TV Productions v. Agricultural Associations*, 3 P.3d 1289, 1291 (9th Cir. 1993). Instead, it is to be treated as an affirmative defense. *Id.* Like other affirmative defenses, the party asserting the defense has the burden of establishing immunity under the Eleventh Amendment. *Id.*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Chavez v. Bank of America, N.A.*, 2010 WL 1854087, *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss). In evaluating a motion to dismiss under 12(b)(6), the court accepts all factual allegations in the complaint as true and construes the pleading in the light most favorable to the plaintiff. *Hardesty v. Barcus*, 2012 WL 705862, *2 (D. Mont. Jan. 20, 2012). "Dismissal under Rule 12(b)(6) is proper when the complaint either lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory." *Id.* (*quoting Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Courts typically regard exhaustion as an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 116

7

(2007); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). In certain circumstances, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." *Jones,* 549 U.S. at 217 (*quoting Leveto v. Lapina*, 258 F.3d 156, 161 (3rd Cir. 2001)). Consequently, "[i]n the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden." *Albino*, 747 F.3d at 1166.

**IV. Discussion**

    **A. Eleventh Amendment Immunity**

The District argues that Lar's § 1983 claims in Counts I and III are barred by the Eleventh Amendment because the School District is an "arm of the state" entitled to sovereign immunity. (Doc. 4 at 5.)

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The United States Supreme Court has established that the Eleventh Amendment bars suits brought in federal court against a state without its consent, whether by a citizen of that state or another state. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

It is well-settled that states and arms of the state enjoy Eleventh Amendment sovereign immunity from suit, including actions brought pursuant to 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997); *Eason v. Clark County Sch. Dist.*, 303 F.3d 1137, 1140 (9th Cir. 2002). Conversely, local governmental entities, such as municipalities and counties, are liable for their constitutional violations. *Will*, 491 U.S. at 70 (*citing Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979); *Eason*, 303 F.3d at 1141.

Therefore, to determine whether a particular governmental entity enjoys the protection of a state's Eleventh Amendment immunity, courts first consider whether the entity should be treated as an arm of the state. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The Ninth Circuit has articulated a five-factor test to determine whether an entity constitutes an arm of the state for Eleventh Amendment purposes, referred to as the "*Mitchell* factors." *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 (9th Cir. 2003) (*citing Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201). The court examines: (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs an essential governmental function; (3) whether the entity may sue or be sued; (4) whether the entity has the power to

take property in its own name or only in the name of the state; and (5) the corporate status of the entity. *Id.* In making this inquiry, the court looks at the way state law treats the governmental entity. *Mitchell*, 861 F.2d at 201 (*citing Mt. Healthy*, 429 U.S. at 280).

Applying the *Mitchell* factors, the Ninth Circuit has recognized that a school district can be an arm of the state under the Eleventh Amendment. *See e.g., Belanger v. Madera Unified School Dist.*, 963 F.2d 248 (9th Cir. 1992). In that case, it was determined that a California school district was a state agency for purposes of the Eleventh Amendment.

Since then, however, the Ninth Circuit has explained repeatedly that California's relationship to its constituent school districts is unique. *See, e.g., Eason*, 303 F.3d at 1142 ("California has selected a different path from that of most states."). And it has declined to extend Eleventh Amendment immunity to states that do not share the unique structure of the California school system. *See, e.g., Id.* at 1142-44 (Nevada school district more like a local or county agency than a state agency); *Holz v. Nevada City Public School Dist.*, 347 F.3d 1176, 1189 (9th Cir. 2003) (*quoting Mt. Healthy City Sch. Dist.*, 429 U.S. 274, 280 (1977)) (Alaska school district "'is to be treated like municipal corporation or other political subdivision to which the Eleventh Amendment does not extend.'").

In declining to further extend Eleventh Amendment immunity to school districts, the Ninth Circuit has recognized that the majority of courts have determined that school districts are not protected by Eleventh Circuit immunity. *See Eason*, 303 F.3d at 1141, n. 2 (collecting cases). It has also pointed out that the Supreme Court has "mentioned in passing" that the Eleventh Amendment did not protect local school boards. *Eason*, 303 F.3d at 1141 (*citing Missouri v. Jenkins*, 495 U.S. 33, n. 20 (1990)). The Ninth Circuit has also recognized the Supreme Court's holding that an Ohio school district was subject to suit since it was "more like a county or city than . . . like an arm of the State." *Id.* (*citing Mt. Healthy City School Dist.*, 429 U.S. at (1977)).

Nevertheless, in this case the District contends that the Billings School District is an "arm of the state" entitled to Eleventh Amendment immunity. The District maintains that Montana's relationship to its school districts is similar to California's, and therefore supports the conclusion that the District enjoys the State's Eleventh Amendment immunity and that Lar's claims should be dismissed on that ground.

The Court finds, however, that the District has not sustained its burden to establish Eleventh Amendment immunity, and its motion to dismiss on that basis should be denied. Although the District argues that Montana is more akin to California than to the other states in which courts have declined claims of Eleventh

Amendment immunity, it fails to support its argument with any evidence or citations to any authority that would command such a result.

The District's analysis is largely limited to the first *Mitchell* factor – whether a judgment would be satisfied out of state funds. The District states in its brief, without other evidentiary support, that it is "funded at nearly 90% state funds." (Doc. 4 at 8.) Therefore, it contends that a "judgment against the school district would ultimately be paid using state funds." *Id.* From these assertions, the District maintains that "[b]ecause any money judgment against the School District directly drains dollars aimed at educating Montana public school children, the Eleventh Amendment precludes the type of action brought by Plaintiff." *Id.*

The District's showing is deficient. First, the percentage of money a state contributes to a school district is not determinative. The Ninth Circuit declined to extend Eleventh Amendment immunity in *Holz*, for example, despite the fact that the state contributed ninety-eight percent of the school district's budget. *Holz*, 347 F.3d at 1182. The Tenth Circuit similarly declined to grant Eleventh Amendment to a school district where the state of New Mexico contributed ninety-eight percent of that district's funds and ninety-five percent of statewide districts' funds. *Duke v. Grady Mun. Schools*, 127 F.3d 927, 980-981 (10th Cir. 1997).

In addition, the Ninth Circuit has explained that the first *Mitchell* factor "does not focus on whether a possible judgment against the entity would impact

the state treasury.  Rather, the relevant inquiry is whether [a state] will be *legally required* to satisfy any monetary judgment obtained against the [School] District." *Holz*, 347 F.3d at 1182 (emphasis in original) (quotations omitted).  The District has not presented any basis for the Court to conclude that Montana would be *legally required* to satisfy a judgment to Lar, even if state funds are likely to be used in practice.

In its reply, the District also briefly discusses the oversight exercised by the Montana Office of Public Instruction over school administration and funding, but it does not explain how this information relates to the analysis under *Mitchell*.  (Doc. 15 at 5-6.)  Furthermore, the District completely overlooks the third, fourth, and fifth *Mitchell* factors.  (*Id.*)

For these reasons, the Court finds that the District has failed to sustain its burden to establish Eleventh Amendment immunity, and recommends that the District's motion to dismiss on Eleventh Amendment grounds be denied.

### B. Administrative Exhaustion

The District further argues that Lar's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to exhaust her administrative remedies.  The District maintains Lar's Title VI claim in Count II of the Complaint must be dismissed for failure to exhaust the administrative remedies provided in Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII).  It further

maintains that Lar's § 1983 claims in Counts I and III are subject to dismissal for failure to exhaust administrative remedies under the Montana Human Rights Act (MHRA).

As noted above, dismissal under Rule 12(b)(6) for failure to exhaust administrative remedies is limited to those rare instances where the failure is clear on the face of the complaint. Otherwise, the defendant must satisfy its burden and produce evidence to establish failure to exhaust as an affirmative defense. In this case, Lar's failure to exhaust is not clear from the complaint, and the District has come forward with no evidence to satisfy its burden. In addition, however, it is apparent that exhaustion is not required in this case.

1. **Title VI**

In maintaining exhaustion is required under Title VI, the District appears to conflate the exhaustion requirements under Title VI with the requirements under Title VII. Title VI bans race-based discrimination in any program or activity receiving federal financial assistance. 42 U.S.C. § 2000d. Title VII, on the other hand, prohibits employment discrimination on the basis of "race, color, religion, sex, or nation origin." 42 U.S.C. § 2000e et seq.

In support of its argument that Lar's Title VI claim requires exhaustion, the District relies on a series of Ninth Circuit decisions holding that administrative remedies must be exhausted prior to filing an employment discrimination claim

under Title VII. *See*, *e.g.*, *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge. 42 U.S.C. § 2000e-5(b)."); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001) (explaining a plaintiff must first exhaust administrative remedies in order to bring a Title VII claim in district court); *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) ("In order to establish subject matter jurisdiction over his Title VII claim [plaintiff] was required to exhaust his administrative remedies by either 'filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge.").

These cases are not applicable. *Sommatino*, *B.K.B.*, and *Freeman* are all Title VII claims brought by employees against their employers alleging workplace discrimination. Title VII's statutory and regulatory scheme requires administrative exhaustion as a pre-requisite to suit in district court. S*ee* 42 U.S.C. § 2000e-5(b). Title VI has no comparable exhaustion requirement.

In addition, in contrast to Title VII claims, courts have found that exhaustion is generally not required under Title VI. The Supreme Court first referenced exhaustion under Title VI in *Cannon v. University of Chicago*, 441 U.S. 677 (1979). In *Cannon*, the Court addressed the issue of whether Title IX authorizes a

15

private right of action for sex-based discrimination. The Court answered in the affirmative, reasoning that Title IX was patterned after Title VI, which provides an implied private remedy. *Id.* at 694. Further exploring this analogy, the Court noted:

> [Title IX] certainly envisions private enforcement suits apart from the administrative procedures that Title VI, like Title IX, expressly creates. If such suits would not hamper administrative enforcement of Title VI against local and state school officials, it is hard to see how they would do so with respect to other recipients of federal funds. . . . [W]e are not persuaded that individual suits are inappropriate in advance of exhaustion of administrative remedies. Because the individual complainants cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time, it makes little sense to require exhaustion. *Id.* at 706–08 n.41.

"Courts interpreting the *Cannon* decision have explicitly applied it to Title VI claims and squarely hold that litigants need not exhaust their administrative remedies prior to bringing a Title VI claim in federal court." *Neighborhood Action Coal. v. City of Canton, Ohio*, 882 F.2d 1012, 1015 (6th Cir. 1989).

In *Canton* the Sixth Circuit observed that Title VI does not provide a "mechanism by which the class protected by the statute can actively participate in the administrative process." *Id.* "Under such circumstances," the Court concluded, "requiring litigants to exhaust their administrative remedies would impose an undue hardship and delay upon their attempts to vindicate their rights." *Id. See also, Chowdhury v. Reading Hospital and Medical Center*, 677 F.2d 317 322 (3rd Cir. 1982) (administrative exhaustion not required prior to bringing a

discrimination action under Title VI); *Doe v. Garrett*, 903 F.2d 1455, 1460 (11th Cir.1990) ("it is established, as a general matter, that Title VI . . . does not incorporate Title VII's requirement of exhaustion of administrative remedies"); *Subryan v. Regents of Univ. of Colorado*, 813 F. Supp. 753, 759 (D. Colo. 1993) (exhaustion of administrative remedies is not required, since "Title VI does not provide a mechanism by which the class protected by the statute can actively participate in the administrative process").

Therefore, unless administrative exhaustion is required by some other provision of law, a plaintiff is not required to exhaust administrative remedies prior to bringing a claim under Title VI.

### 2.     § 1983 Claim

The Court also rejects the District's claim that Lar must exhaust her claims under the MHRA prior to bringing her §1983 claims in Counts I and III. The United States Supreme Court has made clear that claims under § 1983 generally do not require exhaustion. *Jones v. Brock*, 549 U.S. 199, 212 (2007); *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 516 (1982).

Nevertheless the District cites *Shields v. Helena Sch. Dist. No. 1*, 943 P.2d 999, 1005 (Mont. 1997) for the proposition that Montana law requires administrative exhaustion under the MHRA when the gravamen of a § 1983 claim relates to discrimination. (Doc. 4 at 10-11.) In *Shields*, the plaintiffs alleged that

17

the Helena School District failed to properly classify their child as a disabled student, thereby depriving him of an appropriate education. Their claims were brought under § 1983, § 504 of the Rehabilitation Act, as well as various state law tort claims. *Id.* at 1001.

The Helena School District moved to dismiss on the grounds that the plaintiffs had not exhausted administrative procedures under the federal Individuals with Disabilities Education Act (IDEA) [2] or the MHRA. *Id.* The plaintiffs maintained that they were not required to exhaust under the IDEA, since their claims were brought under § 1983, not the IDEA. *Id.* at 1003. They further argued that they were not required to exhaust under the MHRA, because their remaining claims were state tort actions that did not fall within the MHRA. *Id.* at 1005.

The Montana Supreme Court affirmed the dismissal of the plaintiffs' § 1983 claim. The Court determined that, since the plaintiffs could have brought their claims under the IDEA, they were required to exhaust the IDEA administrative procedures before filing suit in district court. *Id.* at 1004. The Court held

---

[2] The IDEA "ensures that children with disabilities receive needed special education services." *Fry v. Napoleon Community Schools*, _____ U.S. _____, 137 S.Ct. 743, 749 (1917). The IDEA has an express exhaustion requirement for claims subject to the Act, which at the time of the *Shields* decision was codified at 20 U.S.C. § 1415(f) (1994). Because Lar's claim does not relate to a child with a disability or the need for special education services, the IDEA is not applicable here.

"'[p]arties cannot circumvent the IDEA's exhaustion requirements by asserting claims under other laws while they deliberately avoid asserting a cognizable claim under the IDEA.'" *Id.* (*quoting from Koopman v. Fremonty Cty. School Dist. No. 1,* 911 P. 2d 1049, 1053 (Wyo. 1996)). With respect to their state tort claims, the Montana Court found that the plaintiffs were required to exhaust the procedures under the MHRA before bringing those claims in district court, since the gravamen of their complaint fell within the ambit of the MHRA. *Id.* at 1005-06.

Therefore, the Montana Supreme Court found in *Shields* that the plaintiffs were required to exhaust their claims arising from the denial of special education services under the IDEA, and were required to exhaust their state tort claims alleging discrimination under the MHRA. Contrary to the District's assertion here, however, *Shields* does not stand for the general proposition that all § 1983 claims alleging discrimination require exhaustion under the MHRA; only those arising under state law.

This was made clear in *Jones v. Mont. Univ. Sys.*, 155 P.3d 1247, 1255 (Mont. 2007), where the Montana Supreme Court expressly recognized that a "party normally need not exhaust available state administrative remedies before seeking to vindicate a federal constitutional or statutory right through a § 1983 action filed in federal or state court." The Court explained however, that because the petitioners in *Jones* did not have a viable claim under federal law, and only

19

alleged a violation of antidiscrimination provisions contained in the MHRA, they were required to first exhaust the available administrative remedies before pursuing a "*state law discrimination claim in district court.*" *Id.* (emphasis added). Because Lar's § 1983 claim is not a state law tort claim, or a "state law discrimination claim," *Shields* is inapposite.

**Conclusion**

Based on the foregoing, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss (Doc. 3) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 10th day of August, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge